UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HECTOR ACEVEDO,                                    16-CV-769-MJR

DECISION AND ORDER

                  Plaintiff,

    -v-

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                  Defendant.
_____

Pursuant to 28 U.S.C. §636(c), the parties have consented to disposition of this case by a United States Magistrate Judge. (Dkt. No. 13).

Plaintiff Hector Acevedo brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying him Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Acevedo's motion (Dkt. No. 9) is denied and the Commissioner's motion (Dkt. No. 12) is granted.

## **BACKGROUND**

On March 12, 2013, Acevedo filed an application for SSI alleging disability since September 1, 2012 due to diabetes, gastroesophageal reflux disease ("GERD"), hypertension, hypercholesterolemia, diabetic polyneuropathy, and a gunshot wound to the left leg. (*See* Tr. 176-86, 243-48).[2] Acevedo suffered the gunshot wound in 2009

---

[1]     Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is automatically substituted for the previously named defendant Carolyn W. Colvin. The Clerk of Court is directed to amend the caption accordingly.
[2]     References to "Tr." are to the administrative record in this case.

during a robbery of the tattoo shop he owned and operated. (Tr. 132-33). Acevedo continued to operate the tattoo shop until 2011. (*Id.*). Acevedo has not worked since 2012, when he worked at a chocolate factory for part of one day and also earned money picking up and selling scrap metal. (Tr. 134-35, 161). Acevedo's SSI application was denied on June 4, 2013 (Tr. 176-86, 191-94), after which he requested a hearing before an Administrative Law Judge (Tr. 195). On December 4, 2014, Acevedo, represented by counsel, appeared before Administrative Law Judge Stephen Cordovani (the "ALJ") for a hearing. (Tr. 125-74). On March 27, 2015, the ALJ issued his decision denying Acevedo's SSI claim. (Tr. 106-24). Acevedo requested review by the Appeals Council (Tr. 103), but on September 14, 2016, the Appeals Council denied Acevedo's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-7). This action followed.

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions, even if supported by substantial evidence, must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first,

whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 to subpart P of part 404 of the Commissioner's regulations (the "Listings") or is "equal to" an impairment listed in Appendix 1. *Id.* §416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.     *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Acevedo has not engaged in substantial gainful activity since March 12, 2013, his SSI application date. (Tr. 111). At step two, the ALJ concluded that Acevedo has the following severe impairments: "status post gunshot wound to the left leg; asthma; obesity; diabetes mellitus; diabetic neurologic and peripheral circulatory issues affecting both feet; bilateral plantar fasciitis; and sleep apnea." (*Id.*). At step three, the ALJ found that Acevedo does not have an impairment or combination of impairments that meets or medically equals one of the Listings. (Tr. 112). Before proceeding to step four, the ALJ assessed Acevedo's RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in [20 C.F.R. §416.967(a)], except he: cannot kneel, crouch, crawl or climb ladders, ropes or scaffolds; can occasionally climb stairs and ramps; cannot work around unprotected heights or around heavy, moving machinery; must avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and other respiratory irritants; can have no exposure to extreme cold or heat, or damp, wet environments; cannot stand or walk on concrete surfaces; cannot use his dominant right hand for standing or walking due to the use of an assistive device; can frequently handle, reach and finger with the right hand; is able to work with the ability to alternate between sitting and standing every thirty minutes; and can sustain attention and concentration so long as there is little independent judgment or mental variation required.

(Tr. 113). Proceeding to step four, the ALJ found that Acevedo has no past relevant work because his earnings have never risen to the level of substantial gainful activity. (Tr. 118). At the fifth step, the ALJ considered Acevedo's age, education, work experience, RFC, and the testimony of a vocational expert to conclude that he can perform jobs that exist in significant numbers in the national economy, namely, document preparer, order clerk (food and beverage), and charge account clerk. (Tr. 118-19). Accordingly, the ALJ found that Acevedo can successfully adjust to other work and, therefore, that he has not been under a disability within the meaning of the Act since his March 12, 2013 application date. (Tr. 120).

IV. *Acevedo's Challenges*

Acevedo challenges the Commissioner's disability decision on three grounds: (1) the ALJ's RFC assessment is erroneous and not supported by substantial evidence; (2) the ALJ should have found that he meets Listing 1.02 or 1.03; and (3) the ALJ's credibility assessment is erroneous. (*See* Dkt. No. 9-1 (Acevedo's Memo. of Law)). The Court will address each argument in turn.

A. *RFC Assessment*

Acevedo argues that the ALJ erred in finding that he retains the RFC to perform a range of sedentary work because: (1) he cannot frequently handle, reach, and finger with his right hand because he needs that hand to hold a cane while standing and walking; (2) the ALJ's sit/stand option may require him to be on his feet more than two hours, which is inconsistent with the standing and walking requirements of sedentary work; and (3) the ALJ did not consider his obesity in assessing his RFC.

- 7 -

1. *Use of a Cane*

The ALJ found that Acevedo cannot use his right hand while standing or walking because of his cane but that Acevedo can nonetheless frequently handle, reach, and finger with his right hand. Contrary to Acevedo's argument, these two findings are entirely consistent. "Frequent" use of the right hand means using the hand up to two-thirds — *i.e.*, up to five to six hours — of the workday, while "sedentary work" generally involves six hours of sitting and two hours of standing or walking during the workday. Social Security Ruling ("SSR") 83-10; SSR 96-9P. Applying these definitions to the ALJ's RFC assessment, Acevedo could spend five to six hours handling, reaching, and fingering with his right hand during the six hours he is seated; he thus would not have to use his right hand to handle, reach, or finger during the two hours he spends standing or walking with his cane. *See* SSR 96-9P ("Bilateral manual dexterity is needed when sitting but is not generally necessary when performing the standing and walking requirements of sedentary work.").

Acevedo also argues that the ALJ overlooked that he uses his cane for balance, which Acevedo believes significantly limits the number of jobs he can perform. *See id.* ("[T]he occupational base for an individual who must use such a [hand-held assistive] device for balance because of significant involvement of both lower extremities (*e.g.*, because of a neurological impairment) may be significantly eroded."). The ALJ did, however, acknowledge that Acevedo uses his cane for balance. The ALJ noted, for example, that Dr. Hongbiao Liu, a consultative examiner who examined Acevedo in May 2013, concluded that Acevedo needs a single cane for balance and to limit his pain. (Tr. 115-16 *referring to* Tr. 705-09). The ALJ also cited Acevedo's hearing testimony that he

has difficulty maintaining his balance. (Tr. 114). In addition, the vocational expert considered Acevedo's use of a cane but found that it does not preclude him from performing other work. (Tr. 167-68); *see* SSR 96-9P (recommending that an ALJ consult a vocational expert regarding the claimant's use of a hand-held assistive device). Accordingly, the ALJ's findings regarding Acevedo's use of a cane are supported by substantial evidence.

### 2. *Sit/Stand Option*

Acevedo argues that the ALJ's sit/stand option fails to specify how long he would be on his feet before returning to his seat, making it possible that he would need to stand for more than two hours a day. Acevedo's argument is without merit because the ALJ found that Acevedo retains the RFC to perform a range of sedentary work, and sedentary work generally does not require more than two hours of standing or walking in an eight-hour workday. SSR 96-9P. Based on the ALJ's finding of sedentary work, the ALJ clearly did not believe that the sit/stand option would result in Acevedo being on his feet more than two hours a day.

### 3. *Obesity*

Acevedo argues that the ALJ failed to consider his obesity in assessing his RFC. The ALJ did, however, cite Acevedo's weight and body mass index in his decision. (Tr. 115, 116). The ALJ also noted the conclusion of Acevedo's orthopedist, Dr. Donald Nenno, that Acevedo's weight is to blame for his health problems (Tr. 117 *referring to* Tr. 886) but that Acevedo can still perform sedentary work (Tr. 115 *referring to* Tr. 703-04). The ALJ considered Acevedo's obesity and reasonably concluded that Acevedo still

retains the RFC to perform a range of sedentary work. Acevedo's objections to the ALJ's RFC assessment thus fail.

B. *The Listings*

Acevedo argues that the ALJ should have found him disabled under Listing 1.02(A) or 1.03. The Listings describe impairments that the Commissioner deems severe enough to prevent the claimant from performing any gainful activity, regardless of his age, education, or work experience. 20 C.F.R. §416.925(a). Listing 1.02(A) concerns dysfunction of a major peripheral weight-bearing joint, while Listing 1.03 pertains to reconstructive surgery or surgical arthrodesis of a major weight-bearing joint. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§1.02(A), 1.03. To satisfy Listing 1.02(A) or 1.03, Acevedo must show, among other things, the "inability to ambulate effectively," which the Listings define as:

> [A]n extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

*Id.* §1.00(B)(2)(b)(1); *see also id.* §1.00(B)(2)(b)(2) ("To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school.").

The ALJ reasonably concluded that Acevedo can ambulate effectively because Acevedo does not have "an extreme limitation of the ability to walk" or "an impairment(s) that interferes very seriously with [his] ability to independently initiate, sustain, or complete

activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §1.00(B)(2)(b)(1); see also id. §1.00(B)(2)(b)(2). In particular, Acevedo reported being able to handle his personal care, cook simple meals daily, clean his house twice a week, do laundry twice a month, drive, shop in stores once a month for two-to-three hours at a time, socialize with friends, and visit family. (Tr. 270-78, 706). Acevedo's use of a single cane — as opposed to a hand-held assistive device that requires the use of both of his hands, such as a walker — also shows that he can ambulate effectively. 20 C.F.R. Part 404, Subpt. P, App. 1, §1.00(B)(2)(b)(1) ("Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."); *Rivera v. Comm'r of Soc. Sec.*, No. 15 Civ. 8439(GBD)(HBP), 2017 WL 120974, at *11 (S.D.N.Y. Jan. 12, 2017), *report and recommendation adopted*, 2017 WL 946296 (S.D.N.Y. Mar. 9, 2017) (finding claimant could ambulate effectively because she needed only one cane to stand and walk). Although the record shows that Acevedo used crutches while recovering from his gunshot wound, he transitioned to a single cane in May 2010, nearly three years before he filed his SSI application in March 2013. (Tr. 340-41; *see also* Tr. 137, 147, 157, 276, 345-46). In addition, Dr. Liu opined in May 2013 that Acevedo needs only a single cane to ambulate. (Tr. 706).[3] Accordingly, the ALJ's conclusion that Acevedo can effectively ambulate and that he does not meet Listing 1.02(A) or 1.03 is supported by substantial evidence and is not contrary to law.

---

[3] Although Dr. Raul Vazquez's progress notes state through 2014 that Acevedo uses crutches to ambulate (*see, e.g.*, Tr. 923-29), this notation seems to be left over from Acevedo's appointment in March 2010, when he was still using crutches to recover from his gunshot wound (Tr. 640-45). Indeed, besides continuing to report Acevedo's use of crutches, Dr. Vazquez's notes state through 2014 that Acevedo lives with a girlfriend (when in fact he lives with his father) and that he is currently working (when in fact he stopped working in 2012). (*See* Tr. 131-33, 723-30).

C. *Credibility*

Acevedo argues that the ALJ should not have discounted his credibility based upon his failure to seek pain management treatment after learning that his pain management specialist had a long wait time. (Tr. 117 *referring to* Tr. 144-45). Pain relief treatment is relevant in assessing credibility. *See* 20 C.F.R. §416.929(c)(3)(iv), (v). The Court agrees with the ALJ that if Acevedo did in fact have severe pain, he likely would have contacted other pain management specialists or perhaps even pursued surgery after learning that one particular pain management specialist had a long wait time. Acevedo also argues that the ALJ should not have discounted his credibility based upon his failure to lose weight. The ALJ's decision does not, however, cite Acevedo's failure to lose weight as a reason for finding him only partially credible. In any event, even accepting Acevedo's argument that he cannot lose weight because he cannot exercise or afford weight loss treatment, the record shows that he could have taken other measures to lose weight, such as decreasing his calorie intake. (Tr. 923-29). It is the role of the Commissioner, not the Court, to appraise the claimant's credibility. *See Carroll*, 705 F.2d at 642. No basis exists here to disturb the ALJ's credibility assessment.

## **CONCLUSION**

For the foregoing reasons, Acevedo's motion for judgment on the pleadings (Dkt. No. 9) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: November 16, 2017
   Buffalo, New York

              */s/ Michael J. Roemer*
              MICHAEL J. ROEMER
              United States Magistrate Judge